**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **15-04743-hb**

### ORDER SUSTAINING OBJECTION TO HOMESTEAD EXEMPTION

The relief set forth on the following pages, for a total of 13 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**12/17/2015**



US Bankruptcy Judge
District of South Carolina

Entered: 12/17/2015

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>Jeffrey Nelson Vance,<br><br>Debtor(s). | C/A No. 15-04743-HB<br><br>Chapter 7<br><br>ORDER SUSTAINING OBJECTION TO HOMESTEAD EXEMPTION |

**THIS MATTER** comes before the Court on the Objection to Homestead Exemption filed by Founders Federal Credit Union ("Founders")[1] and Debtor Jeffrey Nelson Vance's Response.[2] The issue before the Court is whether the property Vance claims as his homestead has served as his residence pursuant to S.C. Code Ann. § 15-41-30(A)(1). Present at the hearing were Vance and his counsel, F. Lee O'Steen, Suzanne Grigg, counsel for Founders, and Wiley Wood, Senior Vice President of Recovery Services and Loss Control for Founders.

The Court enters the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a)(1), made applicable to these contested matters pursuant to Fed. R. Bankr. P. 7052 and 9014.

### FINDINGS OF FACT

1. Vance is the debtor in this bankruptcy proceeding. He operates a home repair business.

2. Vance owned and resided at 1233 Pinewood Road, Rock Hill, South Carolina ("Pinewood") from 2012 until Vance defaulted on his mortgage obligations and the mortgage holder, Founders, obtained a judgment of foreclosure and sold the property.

---
[1] ECF No. 9, filed Oct. 30, 2015.
[2] ECF No. 12, filed Nov. 4, 2015.

3. As a result of that foreclosure action, Founders obtained a deficiency judgment against Vance and his ex-wife Tiffany Vance in February 2015 in the amount of $65,524.33. This judgment was entered by the Master-In-Equity for York County and filed in the York County Clerk of Court's Office on February 16, 2015, under Docket No. 2014-CP-46-03301.

4. Thereafter, a second judgment in favor of Founders against Vance was filed in the York County Clerk of Court's Office under Docket No. 2015-CP-46-01150 on April 15, 2015, in the amount of $16,261.23.

5. Upon entry, the judgment liens attached to Vance's property located at 465 Arch Drive, Rock Hill, South Carolina ("Arch Drive").

6. In an effort to collect on the aforementioned judgments, Founders initiated a foreclosure action on its judgment liens on Arch Drive on June 24, 2015. At this time, the electric and water services were off at Arch Drive. Until Vance became aware of the judgment foreclosure action, Arch Drive was offered for sale by Vance and he did not live there.

7. On July 5, 2015, the summons and complaint were personally served on Vance at 305 Annafrel Street, Rock Hill, South Carolina ("Annafrel Street"), where he resided at the time with his ex-wife, two children, and mother-in-law. Although he is divorced, he and his ex-wife live as a family unit with their two children.

8. Vance's mother-in-law owns Annafrel Street and Vance testified that he and his ex-wife paid her $200 for monthly rent.

9. Vance testified that he was informed he needed to live at Arch Drive if he wanted to retain it. He did not state who gave him this advice.

10. Vance testified that either in late July or on or about August 1, 2015, he and his family moved to Arch Drive and turned on the electricity and water.

11. In August 2015, Vance's children were eight (8) years old and sixteen (16) months old. Vance testified that in addition to being motivated by his desire to retain the property, he and his family moved to Arch Drive because of personal issues with his mother-in-law and to avoid the monthly rent payment.

12. Vance testified that it was never his family's intention to live permanently at Arch Drive and that it did not meet his family's needs because it only has two bedrooms, is too small for his family of four, and is located in a neighborhood that is not suitable for his family.

13. Vance testified that in late August after the utilities were turned on, there was a plumbing issue at Arch Drive, which caused Vance's ex-wife and children to return to Annafrel Street and the electricity and water were turned off again. Vance testified that he remained at Arch Drive despite the fact that there was no electricity or water, no functioning bathroom, and no furniture. Vance testified that he slept on an air mattress there but returned to Annafrel Street for bath facilities and daily necessities.

14. Vance presented a handwritten quote dated August 29, 2015, for $2,000.00 from an acquaintance to repair the plumbing issue, but the repairs have not been made. Vance testified that he does not have the means to repair the plumbing issue at Arch Drive or to pay for utilities there and at Annafrel Street, and the electricity and water have remained off at Arch Drive since late August or early September. Vance testified that he intends to turn on the electricity at Arch Drive in the future in order for another friend to repair the plumbing in exchange for Vance providing home repairs. Vance testified that

3

when this repair is complete, he and his family will return to Arch Drive, but intend to sell it thereafter.

15.     On September 4, 2015, Vance, with the assistance of counsel, filed a voluntary petition for Chapter 7 bankruptcy relief (the "Petition Date"). He listed Arch Drive as his address.

16.     The Chapter 7 Trustee has since determined that there are no unencumbered assets available for liquidation from which a distribution to creditors might be made.

17.     Arch Drive is the only real property listed on Vance's Schedule A, with an estimated value of $55,000.

18.     Vance's Statement of Financial Affairs states he lived at the foreclosed Pinewood property from 2012 until 2013 and then at Annafrel Street from 2013 to July 31, 2015. However, his testimony indicated that he lived at Pinewood much longer.

19.     Attachments to the schedules indicate that Arch Drive is taxed by York County at the 6% rate rather than the owner-occupied 4% tax rate.

20.     The only debts encumbering Arch Drive are Founders' judgment liens and a judgment lien held by Regional Finance in the amount of $1,471.90.

21.     Vance claims a homestead exemption in the amount of $58,225 under S.C. Code Ann. § 15-41-30(A)(1) in Arch Drive and if his exemption is allowed, he will seek avoidance of the judgment liens pursuant to 11 U.S.C. § 522(f).                                    .

22.     Vance's Schedule I indicates that he and his ex-wife both work with a combined monthly income of $4,093.35, and that they share expenses. Schedule J indicates no monthly expense for rent or mortgage payments and $75.00 for property, homeowner's, or renter's insurance. Vance's monthly utility expenses for electricity, heat, and natural

gas are listed at $195.00 with no expenses for water, sewer, and garbage collection. Vance testified that these expenses are for Arch Drive and Annafrel Street.

23.    Vance presented a bill from the City of Rock Hill dated September 15, 2015, indicating that $195.58 was incurred prior to that date for electricity, water, sewer, and garbage collection. This bill was addressed to Vance at the Annafrel Street address. The bill states Arch Drive was the service address, but it is not evident from the face of the bill which days of that billing cycle Arch Drive had electricity and water.

24.    Vance testified that he stayed at Arch Drive with no electricity, water, or furniture until September or early October when the weather turned cold and then returned to Annafrel Street.

25.    On October 2, 2015, at his first meeting of the creditors pursuant to 11 U.S.C. § 341, Vance testified that he resided at Arch Drive.

26.    Vance stated that Arch Drive "wasn't really a livable house."

27.    Vance receives mail at Arch Drive and Annafrel Street.

28.    The address listed on Vance's driver's license is Annafrel Street.

29.    The majority of Vance's tools for his occupation are stored at Arch Drive.

30.    Vance's bankruptcy schedules list household goods, but he testified that he did not have furniture or household goods at Arch Drive.

31.    Vance did not offer the testimony of any other party to corroborate his claim that he has resided at Arch Drive or to support any other portion of his testimony.

32.    Vance's testimony on direct examination included unsolicited statements blaming Founders for his poor financial condition. He testified that he was three months behind on mortgage payments to Founders on Pinewood when Founders foreclosed on the

5

property and refused to accept his payments unless the entire debt amount was paid. Vance stated that prior to that time, he made timely payments to Founders for many years. Vance also stated that because of the foreclosure, he can no longer purchase a home anywhere and "Founders has made sure of that."

33. Mr. Wiley of Founders testified that after the foreclosure on Pinewood, Vance was given until February 2, 2015, to vacate the property. He further testified that on February 3, 2015, representatives from Founders inspected Pinewood and discovered it had been damaged. The estimated $30,000 in damages included holes in the walls and the hot tub, broken windows and doors, removal of cabinets and counters, and two writings scratched in the living room walls that contained expletives specifically directed to Founders. Founders contacted the Rock Hill City Police and the police report was submitted into evidence. According to Founders, this incident remains under investigation.

34. On rebuttal, Vance testified that he did not stay at Pinewood until February 2, 2015, and believes he left "after Christmas." Vance admitted he removed the cabinets, countertops, and a bathtub at Pinewood prior to leaving the premises, but denied that he damaged the property otherwise. He was not aware of anyone else that had access to the property.

## DISCUSSION AND CONCLUSIONS OF LAW

Founders objected to Vance's homestead exemption under S.C. Code Ann. § 15-41-30(A)(1) in Arch Drive, claiming that it is not and was not his residence. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and this Court may enter a final order.

## I.        THE HOMESTEAD EXEMPTION

Section 522(b) provides that a debtor can elect to exempt from property of the bankruptcy estate that property which is exempt under the applicable state or federal law. 11 U.S.C. § 522(b)(2). South Carolina has opted out of the federal exemptions and has set forth its own system of exemptions. S.C. Code Ann. §§ 15-41-30; 15-41-35. The exemption at issue here arises under state law pursuant to S.C. Code Ann. § 15–41–30(A)(1). This provision states that a debtor may "exempt from attachment, levy, and sale under any mesne or final process issued by a court or bankruptcy proceeding . . . [t]he debtor's aggregate interest, not to exceed fifty thousand dollars in value, in real property or personal property that the debtor or a dependent of the debtor *uses as a residence* . . ." S.C. Code Ann. § 15–41–30(A)(1) (emphasis added);[3] *see also In re Jones,* 397 B.R. 765, 770 (Bankr. D.S.C. 2008) ("In South Carolina, a homestead exemption is properly taken in real property that the debtor uses as a residence.") (citing S.C. Code § 15–41–30(1)).

"A residence is defined as, '[p]lace where one actually lives or has his home; a person's dwelling place or place of habitation; an abode; house where one's home is; a dwelling house.'" *Jones*, 397 B.R. at 770–71 (quoting BLACK'S LAW DICTIONARY 1309 (7th ed. 1999)); *In re Lafferty*, 469 B.R. 235, 244 (Bankr. D.S.C. 2012) (quoting *Lanier v. Beaman,* 394 B.R. 382, 383 (E.D.N.C. 2008) ("A residence is defined by Merriam–Webster as 'the act or fact of dwelling in a place for some time' and as a 'building used as a home.'")).

---

[3] The maximum amount of the exemption is periodically adjusted by the State Budget and Control Board. As a result of such adjustments, the maximum allowable homestead exemption at the time Vance's petition was filed is $58,225 for a single owner.

7

Moreover, when determining whether one resides at a certain property for purposes of the homestead exemption, South Carolina case law has established that "[t]he act and intent as to domicile, and not the duration of residence, are the determining factors." *Holden v. Cribb*, 349 S.C. 132, 140, 561 S.E.2d 634, 639 (Ct. App. 2002) (quoting *Miller v. Miller*, 248 S.C. 125, 129, 149 S.E.2d 336, 339 (1966)).

> By what is apparently the majority rule, the word "reside" or "residence" as used in statutes . . . denotes the place of one's fixed abode, **not for a temporary purpose alone**, but with the intention of making such place a permanent home . . . "[T]he term [residence] means the place where a person has his true, fixed and permanent home and principal establishment, to which he has, whenever he is absent, an intention of returning."
> . . . .
> It is well established that a person's place of residence is largely one of intent to be determined under the facts and circumstances of each case. No specified length of time is required to fix the residence contemplated by our statute; the act and intent and not the duration of the residence are determinative.

*Id.* (emphasis added) (quoting *Nagy v. Nagy-Horvath,* 273 S.C. 583, 586-87, 257 S.E.2d 757, 759 (1979)).

"'To effect a change of residence or domicile, there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence in another place or jurisdiction, with the intention of making the last acquired residence a [permanent] home.'" *Id.* at 140-41 (quoting *Reynolds v. Lloyd Cotton Mills*, 177 N.C. 412, 99 S.E. 240, 242 (1919) *quoted with approval by and followed in Ferguson v. Employers Mut. Cas. Co.,* 254 S.C. 235, 239, 174 S.E.2d 768, 769 (1970) (alteration in original)). "Lack of ordinary necessities, such as running water, public utilities, a septic system, and other facts indicating inhabitability provide evidence that a debtor does not intend to reside at a property." *In re Issa*, 501 B.R. 223, 227 (Bankr. S.D.N.Y. 2013) (citing *In re Scott*, 233 B.R. 32, 41 (Bankr. N.D.N.Y. 1998)).

8

"It is a basic principal [sic] of bankruptcy law that exemptions are determined as of the date that a bankruptcy petition is filed." *In re Gill*, No. 11-80976, 2011 WL 4712087, at *2 (Bankr. M.D.N.C. Aug. 19, 2011) (citing *In re Orso*, 283 F.3d 686, 691–92 (5th Cir. 2002) ("We cannot emphasize too strongly that the day on which the bankruptcy petition is filed is the 'as of' date for determining the applicability of exemption provisions.")); *Dean v. LaPlaya Investments Inc.*, 319 B.R. 474, 478 (Bankr. E.D. Va. 2004) (stating that as of the petition date, "creditors' rights are fixed (as much as possible), the bankruptcy estate is created, and the value of the debtor's exemptions are determined.")

II.  **BURDEN OF PROOF**

Exemptions are critical to facilitating the debtor's "fresh start" and, therefore, must be construed liberally in favor of the debtor. *See In re Nguyen*, 211 F.3d 105, 110 (4th Cir. 2000) ("Generally, statutes creating debtors' exemptions must be construed liberally in favor of the debtor and the exemption."); *In re Shaffer*, 78 B.R. 783, 784 (Bankr. D.S.C. 1987) (finding that "exemptions are to be construed liberally in favor of the debtor" (citations omitted)).

Pursuant to Fed. R. Bankr. P. 4003(c), "the objecting party has the burden of proving that the exemptions are not properly claimed." "South Carolina law allows for an attack on homestead exemptions . . . by proof that the property is not used as a residence[.]" *In re Autry*, No. 14-00716-DD, 2014 WL 1347228, at *3 (Bankr. D.S.C. Apr. 4, 2014). The objecting party must demonstrate by a preponderance of the evidence that the property is not used as the debtor's residence. *See id.*

### III. FOUNDERS' OBJECTION SHOULD BE SUSTAINED AND VANCE'S HOMESTEAD EXEMPTION IN ARCH DRIVE CANNOT BE ALLOWED

After having an opportunity to observe Vance as a witness, the Court finds that his credibility as to his use of and intentions regarding Arch Drive is questionable. Some of his testimony was believable and some was not. Therefore, other evidence before the Court takes on greater importance and must be carefully examined and considered.

Overall, the evidence indicates that at the time of filing, Arch Drive was not Vance's "place of habitation," *Jones*, 397 B.R. at 770-71, or a place Vance intended to make his permanent home. *Holden*, 349 S.C. at 140, 561 S.E.2d at 639. Rather, the evidence indicates that the only reason Vance occupied Arch Drive for any amount of time was for the temporary purpose of attempting to stake a claim for a homestead exemption in this bankruptcy case. *Id.* (stating that "residence" "denotes the place of one's fixed abode, not for a temporary purpose alone, but with the intention of making such place a permanent home . . ."). Even if the Court believed Vance's claim that he regularly slept at Arch Drive – a claim that was not supported by evidence from any other source – the Court does not believe Vance's testimony that he "lived" there.

As of the Petition Date, Arch Drive did not have electricity, water, or furniture and Vance described it as uninhabitable. Vance claims to have slept on an air mattress there, but provided no explanation as to where the household goods listed on his schedules are located. Vance admitted that as of the Petition Date, he did not intend to live at Arch Drive permanently or long-term, the property was too small to accommodate his family, the property did not meet his family's needs, and his family lived elsewhere. The plumbing issue that required the utilities to be turned off remains unrepaired. *See Issa*, 501 B.R. at 227 (citing *Scott*, 233 B.R. at 41) ("While there is no requirement that a plot of land be

10

instantly habitable in order to qualify as a homestead, the Court finds significance in the fact that Debtor apparently took no action to repair or mitigate any of these defects . . . Taken together, the Court finds that these facts create an inference that Debtor did not have a bona fide intention of making [the property] his permanent regular residence as of [the petition date]."). Moreover, Vance lived at Arch Drive only for a short time and quickly returned to Annafrel Street. *Lafferty*, 496 B.R. at 245 (finding that debtor's use of another address post-petition on his food stamp application and recertifications, under penalty of perjury, was evidence that the property he claimed a homestead exemption in was not his residence). He also returned to Annafrel Street daily when the utilities were not in service at Arch Drive to be with his family and to meet his daily needs. *Holden*, 349 S.C. at 140-41, 561 S.E.2d at 639 (finding that to change residence or domicile, the person must abandon the first domicile and intend not to return to it).

From the whole of the evidence, it is clear that any occupation of the property was primarily motivated by the judgment foreclosure action and his desire to retain the property for sale. Although this motivation does not *prevent* Vance from establishing a residence at Arch Drive, the evidence indicates that he did not do so. Vance's actions indicate that he never abandoned his home at Annafel Street for another location. Vance failed to sufficiently utilize Arch Drive as a residence at any relevant time and it did not serve as his residence for purposes of claiming a homestead exemption pursuant to S.C. Code Ann. § 15-41-30(A)(1).

The Court is mindful that debtors may face challenging situations and the facts do not have to be neat and tidy to achieve an exemption. *See In re Bycura*, 540 B.R. 322 (Bankr. D.S.C. 2015) (overruling creditor's objection to homestead exemption claimed on

two portions of a divided parcel of real property, one of which contained the home the debtors lived in, the other contained the driveway and well for both parcels and a home under construction that was used for storage and family recreation); *In re Lewis*, C/A No. 14-04147-hb, slip op. (Bankr. D.S.C. Dec. 12, 2014) (allowing the debtor to claim a homestead exemption in property where she and her father lived and in which debtor owned a 1/3 remainder interest because the debtor's testimony was credible and she provided consistent, corroborating evidence and testimony that this property was where she resided even though her driver's license, tax return, and W-2 listed another address where she previously lived and where her estranged husband resided, and the utilities bills and homeowner's policy for the property she claimed as her residence were in her father's name). Rather, a debtor must simply meet the requirements of the applicable law to claim the exemption. From a review of the evidence here and Vance's own testimony, the Court finds that, even construing the evidence and exemption liberally in favor of the debtor, Founders has shown that Arch Drive did not serve as Vance's residence at any relevant time for purposes of claiming a homestead exemption pursuant to S.C. Code Ann. § 15-41-30(A)(1).

**IT IS, THEREFORE, ORDERED** that Founders Federal Credit Union's Objection to Homestead Exemption is sustained and Debtor Jeffrey Nelson Vance cannot claim a homestead exemption in the real property located at 465 Arch Drive, Rock Hill, South Carolina.

**AND IT IS SO ORDERED.**